In re R & C PETROLEUM,
INC., Debtor.

Leonard Pipkin, Trustee of the Unsecured Creditors' Trust Created in the Confirmed Chapter 11 Plan of Reorganization for R & C Petroleum, Inc., Plaintiff,

v.

Henry & Peters, P.C., and Jeffrey
L. Geese, Defendants.

v.

Leonard Pipkin, Individually.

Bankruptcy No. 94–60443–S.
Adversary No. 97–6040.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

June 7, 1999.

Broadus A. Spivey, Spivey & Ainsworth, P.C., Austin, TX, for Leonard Pipkin as Trustee.

Michael J. Weiss, Weiss & Assoc., Lubbock, TX, for Leonard Pipkin, as Third Party Defendant.

Daniel J. Brustkern, and Stephen A. Roberts, Austin, TX, for Defendant, Jeffrey L. Geese.

I.E. Barlow, Tyler, TX, for Defendant, Henry & Peters, P.C.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Defendants' Motion For Summary Judgment. The Court considered the pleadings filed and the evidence adduced. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

This case was initiated by the filing of an involuntary Chapter 7 petition against R & C Petroleum Inc. ("Debtor"). The case was promptly converted to a voluntary Ch. 11. Henry & Peters, P.C., a firm

of certified public accountants, was employed with Court approval as accountants for the debtor-in-possession during the pendency of the Chapter 11. Shortly after a plan of reorganization was confirmed in 1995, Leonard Pipkin, Trustee of the Unsecured Creditors' Trust ("Pipkin"), filed a suit against certain of the Debtor's insiders for breach of fiduciary duties. On May 2, 1997, Pipkin filed a Complaint against Henry & Peters, P.C. and Geese, an accountant with Henry & Peters, P.C. (the "Defendants"), alleging breach of fiduciary duty, professional negligence, gross negligence and violation of the Deceptive Trade Practices Act. Pipkin's complaints arise, in part, from a natural gas purchase and transportation contract between R & C Petroleum (the "Debtor") and Wickford Energy Marketing L.C. Pipkin avers that the contract was unconscionable and unapproved by the Bankruptcy Court, even though it was entered into two months after the R & C bankruptcy case was converted from a Ch. 7 to a Ch. 11, while the Debtor was functioning as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108. Under the contract, according to Pipkin, the Debtor paid substantially more than it should have for the transportation of gas: $.52 instead of $.06 MMBtu. In addition, Pipkin alleges funds purportedly held in escrow for the benefit of creditors were retained by Strong, Coolures, Lay, Manteres and others acting as officers and directors of the Debtor. Therefore, Pipkin alleges that these officers and directors and other insiders of the Debtor engaged in fraudulent conduct and self dealings.

The Defendants were serving as the debtor in possession's accountants at the time of the execution of the Debtor's contract with Wickford Energy Marketing, L.C. They were responsible for preparing the Debtor's financial records, filing schedules and statements of the debtor-in-possession and for preparing and filing the required Chapter 11 monthly operating reports. Due to the Debtor not being forthcoming with information, the Defendants were unable to completely fulfill their responsibilities. Pipkin alleges that under the professional code for accountants, the Defendants should have withdrawn their representation of the Debtor at this point. Had they done so, Pipkin alleges, the Bankruptcy Court would have been aware that problems were brewing and could have appointed a Trustee possibly saving the creditors of the estate millions of dollars.

The Defendants dispute Pipkin's allegations on this point, in that they claim to have contacted the U.S. Trustee regarding the problems.[1] The Defendants argue, inter alia, that the reasonableness and necessity of their services and the value to the estate of same were adjudicated in connection with their October 10, 1995 final fee application trial; they had no control over the actions complained of; the action is barred by the statute of limitations; and they are exempt as providers of professional services from action under the Texas Deceptive Trade Practices Act.[2]

---

1. The Defendants filed a Third Party Complaint against Pipkin, in his individual capacity, for contribution in the event they are found to have breached their fiduciary duties. The Third Party Complaint alleges that Pipkin, who served as Court appointed accountant to the Creditors' Committee, possessed the same knowledge of problems with the Debtor and of the Debtor's transactions as they. Therefore, they posit that Pipkin bore an equal or greater fiduciary duty to the estate as they, such that if they are found liable for breaches of fiduciary duty during that period of time, he should also be found liable and contribute accordingly to any damages found by the Court. Pipkin has sought dismissal of the Third Party Complaint. The dismissal is currently pending before this Court and will be treated separately.

2. There was abatement of the matter when the parties went to mediation over the issue of waiving the 60 day DTPA notice. In the interim, the FBI took custody of some of the records of the Debtor. With criminal investigation and charges pending, other adversaries in the case, apparently similar or related in nature to this one, were stayed in District Court.

The Defendants filed the Motion for Summary Judgment currently before the Court which came on to be heard pursuant to regular setting and was taken under advisement.

## ISSUES

(1) Summary Judgment is appropriate in bankruptcy proceedings when there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law. *In re McCafferty*, 96 F.3d 192. The burden of establishing the non-existence of a "genuine issue" is on the party moving for Summary Judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). One cannot rest on the mere allegations of the pleadings. In *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court held that (1) only disputes over facts that might legitimately effect the outcome are material under Rule 56; (2) the test for determining whether a genuine issue of material fact exists is the same as the test for granting a directed verdict (i.e. whether the evidence is sufficient to sustain a verdict for the non-moving party); and (3) in applying the test the court must view the evidence in the light most favorable to the non-movant and assess its sufficiency according to the evidentiary burden imposed by the controlling substantive law. Under Rule 56(e), the burden shifts. Rule 56(e) requires the opposing party to "set forth specific facts" that demonstrate the existence of a genuine issue for trial.

## DISCUSSION

■ The basis of the Defendants' Motion For Summary Judgment is that even if Pipkin's malpractice allegations are found to be true, his claims are barred by application of the doctrine of *res judicata*. Application of the doctrine is proper only if the following four requirements are met: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and the same cause of action must be involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir.1992). The Defendants' position is that Pipkin's complaints against them were or should have been adjudicated either at the hearing on confirmation of the plan or at the hearing on their Final Fee Application. Defendants argue that "It is well established law in this Circuit that the confirmation of a plan invokes the doctrine of *res judicata* and bars any party from pursuing a claim which was pursued or could have been pursued prior to confirmation of the Plan unless such claim is specifically reserved for later adjudication." For this premise, the Defendants cite to *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir.1992), *In re Howe*, 913 F.2d 1138 (5th Cir.1990) and *In re Kelley*, 199 B.R. 698 (9th Cir. BAP 1996). See also, *In re W.J. Services, Inc.*, 139 B.R. 824 (Bkrtcy. S.D.Tex.1992) [the adjudication of a professional's fee application invokes the doctrine of res judicata to bar future malpractice claims]. Therefore, the Defendants argue, either the order on confirmation entered on or about June 26, 1995 or the Order on Final Application of Henry & Peters, P.C. As Accountants For The Chapter 11 Debtor–In–Possession, For Allowance of Accountant's Fees and Reimbursement of Expenses (the "Order") entered of record with this Court on October 24, 1995, bars Pipkin's claims in the adversary proceeding.

Pipkin believes that the motion for summary judgment should be denied because the Defendants fail to conclusively prove all of the elements of their affirmative defense of res judicata. Specifically, he believes that there is no final judgment on the issue of malpractice because Defendants' affirmative defense relies upon an "incorrectly decided" holding by the Court in *In re W.J. Services, Inc.*, 139 B.R. 824 (Bkrtcy.S.D.Tex.1992). In this case, Pipkin opines that "the court failed to recognize its own limitations on grant-

ing a final judgment in non-core proceedings." Alternatively, Pipkin contends that even if this Court rules "as a matter of law that the present malpractice claim satisfies the strict definition of core proceeding", Defendants would be unable to prevail because the malpractice claim was not discoverable until the end of 1995. The factual evidence upon which he bases the latter theory is the Affidavit of Jason Searcy, the attorney representing the bankruptcy estate in the adversary proceeding against Wickford Energy Marketing, L.L.C.

 The Court has determined that the Motion for Summary Judgment must be granted in part and denied in part. The Defendants may not prevail on their *res judicata* defense based solely upon the information before the Court. The *res judicata* argument based on the matter having been determined by the court at the confirmation hearing is not viable. The law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised *pertaining to such plan* are res judicata. *Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir.1990). The issues addressed at a confirmation hearing are not the "bad acts" of the accountants or the benefit of their services to the estate and its creditors, rather, the court reviews the ballot tally, best interests of creditors, feasibility, etc. Therefore, this basis for the Defendants' claim for summary judgment must be denied.

 Summary judgment must also be denied respecting the plea for *res judicata* based on the hearing on the Defendants' fee application. Pipkin is correct that for this Court to find the doctrine of *res judicata* applies depends upon the finality of the judgment in the fee application hearing. Pipkin avers that the fee application judgment was not final as to the issue of malpractice because any proceeding to determine malpractice is "non-core" as defined under 28 U.S.C. § 157. This Court must disagree. In the case of *Southmark*

*Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir.1999), the Fifth Circuit held that claims for professional misconduct against court appointed professionals are core matters. *See also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3rd Cir.1994); *Walsh v. Northwestern Nat'l Ins. Co.*, 51 F.3d 1473, 1476 (9th Cir.1995); *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 n. 4 (6th Cir.1992). A malpractice claim like the present one [non-disclosure and dereliction of duty by the accountants] inevitably involves the nature of services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999). The Fifth Circuit Court's reasoning in *Southmark* applies here. However, the Fifth Circuit distinguished between the preclusive effects of the bankruptcy courts' ruling in such matters. The preclusive effect of this Court's earlier ruling is an issue to be reserved for trial on the merits in the case at bar, because other facts dispose of the summary judgment motion under consideration.

 Pipkin's response to the Motion for Summary Judgment raised a fact issue which requires denial of the relief sought, i.e. whether the malpractice claim was not discoverable until the end of 1995. The factual evidence upon which Pipkin relies is the Affidavit of Jason Searcy, the attorney representing the bankruptcy estate in the adversary proceeding against Wickford Energy Marketing, L.L.C., which states that the malpractice was not discoverable until the end of 1995, after the confirmation and fee application hearings. The testimony in Searcy's Affidavit is contradicted by Pipkin's own pleadings and the record of this case, specifically, the objection to the fee application filed by Pipkin entitled, Trustee of the Unsecured Creditors Trust Opposition to The Fee Application of Henry & Pe-

ters, P.C. (the "Trustee's Objection") and the evidence, argument and testimony proffered at the hearing on the fee application of Henry & Peters, P.C. The Trustee's Objection includes among its grievances that the debtor-in-possession's monthly operating reports, prepared by the Defendants contained disclaimers in footnotes that Pipkin interpreted as "more for the benefit of protecting the accountants from malpractice or other suits than for providing benefit to the Debtor, Debtor's estate and creditors".

 Until the Court rules on whether the malpractice was discoverable, the Court is likewise unable to determine whether Pipkin's Complaint should fail as a matter of law under Rule 13 of the Federal Rules of Civil Procedure as a compulsory counterclaim not properly brought.[3] Generally, a counterclaim is designated as permissive or compulsory according to its relationship to the opposing party's claim. A counterclaim that arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim is compulsory and falls under Rule 13(a). Fed.R.Civ.P. 13(a) and *McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 304 (5th Cir.1993). The language of the Trustee's Objection, although contradicted by Searcy's Affidavit, suggests strongly that Pipkin, as Trustee, maintained some level of awareness at the time he prepared his Objection, that certain acts or omissions on the part of the Defendants potentially gave rise to malpractice or related suits, including suits for professional negligence as charged in the Complaint. The "bad acts" or omissions complained of by Pipkin in his Adversary

Complaint arise from the same transactions or occurrences as those complained of by Pipkin in his Trustee's Objection, thereby making them compulsory and subject to Rule 13(a). In *Crutcher v. Aetna Life Ins. Co.*, a 5th Circuit case, the 5th Circuit Court of Appeals agreed with the District Court ruling dismissing a claim as barred under Rule 13(a) because "the facts which formed the basis of Crutcher's tort claim rendered it a compulsory counterclaim that Crutcher was required to raise in the earlier guarantee lawsuit with Aetna … since the facts were known to him at that time." *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir.1984). See also: *Fagnan v. Great Central Ins. Co.*, 577 F.2d 418 (7th Cir.1978), *cert. denied* 439 U.S. 1004, 99 S.Ct. 615, 58 L.Ed.2d 680 and *McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 304 (5th Cir.1993) ["A counterclaim is compulsory when both the original claim and the counterclaim arise from the same 'aggregate of operative facts'."]

 Failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim. *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir.1984). Specifically, failure to assert a claim acts as a waiver of that claim. In *Kane v. Magna Mixer Co.*, 71 F.3d 555 (6th Cir.1995), the Sixth Circuit Court of Appeals [citing to its own ruling in *Carnation Co. v. T.U. Parks Constr. Co.*, 816 F.2d 1099, 1103 (6th Cir. 1987) and to 6.C. Wright & A. Miller, Federal Practice and Procedure, § 1417 (1971)] described the effect of the rule: "the result that a compulsory counterclaim is barred if not asserted as required by the

---

**3.** Rule 13, "Counterclaim and Cross–Claim" reads as follows:

Rule 13(a) Compulsory Counterclaim.—

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot ac-

quire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under Rule 13.

rule is not spelled out in the rule itself. However, the result is well established by the cases, sometimes on a theory of res judicata and sometimes on a theory of waiver or estoppel. ..." *Kane v. Magna Mixer Co.,* 71 F.3d 555, 562 (6th Cir.1995), *cert. denied* 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949. See also: *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). As the Fifth Circuit Court said in *Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607, 609 (5th Cir.1988), citing to the Seventh Circuit Court, "Rule 13(a) is in some ways a harsh rule. It forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them. The rule, however, is the result of a balancing between competing interests. The convenience of a party with a compulsory counterclaim is sacrificed in the interest of judicial economy." *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1082 (7th Cir.1979). The difference between the statement in Searcy's Affidavit and those in the Trustee's Objection requires a fact determination upon which the determination of whether the malpractice, if any, was discoverable prior to the end of 1995 depends. The determination directly effects whether Pipkin failed to raise a compulsory counterclaim and constitutes a genuine issue of material fact which requires that summary judgment be denied.

However, no genuine issue of material fact exists with respect to that portion of the Complaint alleging violations under the Texas Deceptive Trade Practice Act. The Texas Business and Commerce Code, V.T.C.A Section 17.49(c) & (d), the Texas Deceptive Trade Practices Act, as supported by the case law, clearly excludes professional service providers such as attorneys, doctors and accountants, among other licensed professionals, with certain limited exceptions that do not apply in this instance, for example, express misrepresentation of a material fact that cannot be characterized as advice, judgment or opinion; bodily injury, death. The evidence before the Court supports a determination that the Defendants are entitled to judgment as a matter of law in their favor with respect to the allegations of violations of V.T.C.A Section 17.49(c) & (d), as well as with respect to damages under the Deceptive Trade Practices Act.

The Motion For Summary Judgment should be granted solely on the issue of any violations alleged under the Texas Deceptive Trade Practices Act. On all other issues, the Motion for Summary Judgment should be denied. An order will be entered accordingly.